UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| WELLS FARGO BANK N.A. TRUSTEE FOR BANC OF AMERICA ALTERNATIVE LOAN TRUST 2006-5 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-5,<br><br>Plaintiff,<br><br>v.<br><br>SATICOY BAY LLC – SERIES 3665 REMINGTON GROVE,<br><br>Defendant. | Case No. 17-cv-02677-RFB-EJY<br><br>**ORDER** |

## I. INTRODUCTION

The Court held a one-day bench trial on May 13, 2024. This Order follows with the Court's findings of fact and conclusions of law.

## II. PROCEDURAL BACKGROUND

Plaintiff Wells Fargo commenced this case by filing a complaint on October 17, 2017, seeking declaratory relief that a nonjudicial foreclosure sale conducted under Chapter 116 of the Nevada Revised Statutes ("NRS") did not extinguish its interest in a Las Vegas property located at 3665 Remington Grove Ave., North Las Vegas, Nevada. ECF No. 1. On June 12, 2019, the Court granted Wells Fargo's Motion for Summary Judgment and declared that Wells Fargo's deed of trust was not extinguished by the foreclosure sale. ECF No. 63. Defendant Saticoy Bay filed a motion for reconsideration on July 15, 2019, arguing in part that the Court should reconsider its decision because <u>Jessup I</u> was wrongly decided and going to be reheard. ECF No. 68. The Court denied the motion for reconsideration on March 23, 2020. ECF No. 79.

On June 3, 2020, Saticoy Bay sought relief from judgement pursuant to 59(e) and 60(b), on the grounds that the Nevada Supreme Court had decided Jessup II. ECF No. 80. The Court granted this motion on March 31, 2021, and allowed the parties to resubmit their Motions for Summary Judgment. ECF No. 87. On February 24, 2022, the Court heard oral argument on the Motions for Summary Judgment. The Court concluded that there remained genuine issues of material disputed fact as to whether ACS had a policy of rejecting tenders of nine months of HOA assessment fees, and denied the cross Motions for Summary Judgment.

On October 13, 2023, Plaintiff filed a motion to file a renewed Motion for Summary Judgment, arguing that it believed it could succeed on a new Motion for Summary Judgment based on Perla v. BANA, 458 P.3d 348, 351 (Nev. 2020) and examples of trial testimony by ACS and Miles Bauer representatives demonstrating ACS's policy of rejecting tenders and Miles Bauer's knowledge of this policy. ECF No. 109. The Court denied this motion, finding that successive motions for summary judgment would be repetitive and not based on an expanded factual record beyond that which the Court had already considered. ECF No. 110.

On April 29, 2024, Wells Fargo notified the Court that it was abandoning its quiet title theory claim regarding the commercial reasonableness of the HOA foreclosure sale and would only be pursuing the excused tender theory at trial. ECF No. 138. On this same day, the parties stipulated to dismiss Absolute Collection Services, LLC and Giavanna HOA from the case without prejudice, leaving only Saticoy as Defendant. ECF No. 139.

The one-day bench trial was held on May 13, 2024.

### III. FACTUAL FINDINGS

The Court makes the following factual findings based on the stipulated facts admitted by the parties as well as the testimony and exhibits admitted into evidence at the bench trial.

John Porto and Cynthia Cruz-Porto purchased the property at 3665 Remington Grove Ave., North Las Vegas, Nevada, by obtaining a loan from Bank of American, N.A. in March 2006. The property is located within and governed by a common interest community known as Giavanna Homeowners Association ("Giavanna HOA"). The loan was secured by a deed of trust naming Plaintiff Wells Fargo as the beneficiary of the senior deed of trust. On December 20, 2011, Bank

of America re-recorded the assignment of the first deed of trust to Wells Fargo, who remains the current beneficiary of the senior deed of trust over the Property. In April 2011 and throughout the rest of 2011, BAC Home Loans Servicing LP ("BAC") serviced the senior deed of trust.

Giavanna, through its agent, Absolute Collection Services, LLC ("ACS"), recorded a notice of delinquent assessment lien on September 30, 2010, and a notice of default and election to sell on April 25, 2011. In response to the notice of default, BAC retained counsel, Miles, Bauer, Bergstrom & Winters, LLP ("Miles Bauer") to contact Giavanna. Miles Bauer, on behalf of the senior deed of trust beneficiary, sent a letter to ACS in May 2011, requesting the superpriority amount and offering to pay that amount in full. ACS sent a form response, dated June 11, 2011, declining to provide the superpriority amount unless Miles Bauer submitted proof of foreclosure. Miles Bauer did not respond to ACS's June 2011 letter or send any further correspondence or payment regarding the property.

Giavanna, through its agent ACS, proceeded with the foreclosure sale. Giavanna, through ACS, recorded a notice of sale on April 30, 2014, and August 29, 2014, and foreclosed on or about October 21, 2014. A foreclosure deed in favor of Saticoy was recorded on October 23, 2014.

Rock Jung was employed as counsel at Miles Bauer from 2009 through 2014. Mr. Jung was tasked with representing BAC Home Loans Servicing's first deed of trust lien interest on various properties throughout Nevada against HOA liens that were recorded against the property, including the subject property. At the time that Mr. Jung sent the May 2011 letter on behalf of the senior deed of trust beneficiary, it was Mr. Jung's common practice to send these initial form letters to the HOA trustee/collection agent to determine the superpriority amount upon receiving the notice of default. If Mr. Jung was able to ascertain the superpriority amount, he would calculate the nine months of HOA assessments and provide a check with this amount accompanied by a second form letter that would explain "any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein, an express agreement that BAC financial obligations towards the HOA in regards to the real property . . . has now been paid in full."

By May 2011, Mr. Jung had sent dozens, if not hundreds, of these checks for the

superpriority amount to ACS. Not one of these checks were accepted or cashed by ACS between 2009 and 2012. Kelly Mitchell, the former owner of ACS, explained to Mr. Jung that she would not accept the checks because ACS did not agree with the "paid in full" language accompanying the check for the superpriority amount. Beginning in 2013, ACS agreed to begin accepting checks from Miles Bauer for the nine-month superpriority amount so long as the "paid in full" condition was removed. Accordingly, it was ACS's policy to reject every Miles Bauer tender accompanied by this "paid in full" language through 2014.

## IV.   LEGAL STANDARD

Chapter 116 of the Nevada Revised Statutes allows a homeowner's association with a superpriority lien to extinguish a deed of trust. Nev. Rev. Stat. § 116.3116(2). A deed holder may preserve its interest, however, "by tendering the superpriority portion of the HOA's lien before the foreclosure sale is held." Perla, 458 P.3d at 348. In Perla, the Nevada Supreme Court held that "formal tender is excused when evidence shows that the party entitled to payment had a known policy of rejecting such payments." Id. at 349.

"[T]he tender either must be unconditional or include only those 'conditions on which the tendering party has a right to insist,' such as a request for satisfaction of judgment or a statement that the acceptance of tender satisfies the superpriority portion of the lien." CitiMortgage, Inc. v. Corte Madera Homeowners Ass'n, 962 F.3d 1103, 1107 (9th Cir. 2020) (quoting Bank of Am., N.A. v. SFR Invs. Pool 1, LLC, 427 P.3d 113, 117-18 (Nev. 2018)). Thus, checks accompanied by a "paid in full" condition can be part of a valid tender offer. Bank of Am., N.A. v. Trashed Home Corp., 527 P.3d 968 (Nev. 2023) (Table) (finding that ACS's policy of rejecting checks accompanied by "paid in full" language constituted a "known policy of rejecting tender payments" under Perla).

"In Perla, counsel for the lender, BANA, sent an inquiry letter to the HOA's agent, NAS. . . . . Upon receipt of the notice of default, BANA's counsel informed NAS that it would pay the superpriority portion of the lien after receiving proof of the amount. . . . NAS did not specify the superpriority amount and proceeded with its non-judicial foreclosure sale. At a subsequent bench trial on the purchaser's quiet title claim, the trial court heard testimony that NAS's policy was to

- 4 -

reject any payment for less than the full amount of the lien." CitiMortgage, 962 F.3d at 1107 (citations omitted).

The Nevada Supreme Court concluded that, because evidence at trial established that "it was NAS's business policy to have its receptionist reject any check for less than the full lien amount," and that "Miles Bauer[, BANA's counsel,] and [] [BANA] had knowledge of this business practice," "substantial evidence support[ed] the district court's finding that even if Miles Bauer had tendered a check for the superpriority amount, it would have been rejected." Perla, 458 P.3d at 351. Thus, Perla makes clear that it is not enough that an HOA trustee or agent has a policy of rejecting checks, for futility to be demonstrated; there must also be evidence that the entity making the tender knew of the policy. Id.

## V. DISCUSSION

The Court finds factually and legally that at the time relevant to this action, ACS, as the party entitled to payment of the superpriority portion of the HOA's lien, had a policy of rejecting tenders of the superpriority amount, and that both Miles Bauer and BAC knew of this policy. By the time that Mr. Jung sent the initial form letter in this case in May 2011, Mr. Jung had sent dozens, if not hundreds, of checks containing superpriority payoffs to ACS on behalf of BAC. Each of these checks were accompanied by a letter explaining that any endorsement of the check constituted an agreement that BAC's financial obligations towards the HOA in regards to the real property had been paid in full. ACS did not accept or cash a single one of these checks prior to 2012. ACS's owner, Ms. Mitchell, explained to Mr. Jung that the rejection was based on ACS's position that the superpriority amount did not exist unless and until the deed of trust holder foreclosed. The Court credits Mr. Jung's testimony. Accordingly, although Miles Bauer and BAC never tendered a check after receiving ACS's June 2011 letter, the "obligation to tender the superpriority amount was nevertheless excused because [ACS] would have rejected the check." Perla, 457 P.3d at 350.

Defendant Saticoy argues that tender would not have been futile due to evidence suggesting that ACS began accepting checks in 2013 and 2014, prior to the final foreclosure sale. However, ACS began accepting checks in 2013 only when Miles Bauer agreed to remove the "paid in full"

language. Thus, even assuming for the sake of argument that the relevant timeframe at issue in this case extended through the foreclosure sale in 2014, the evidence establishes that ACS's policy of rejecting checks accompanied with "paid in full" language, a condition that the tendering party had a right to insist on,[1] remained constant throughout this period.

Finally, the Court notes that ACS's boilerplate responses to Miles Bauer's letters sent on BAC's behalf, seeking to tender the superpriority amount of an HOA lien, also support a showing that Miles Bauer and BAC were aware of ACS's rejection policy. See TRP Fund VI, LLC v. PennyMac Loan Servs., LLC, 494 P.3d 903 (Nev. 2021) (unpublished) (stating that the Nevada Supreme Court has "recognized that the ACS response letter . . . is not necessarily insufficient to satisfy Perla's known policy of rejection standard depending on what other evidence and testimony is presented in a particular case").

In sum, the Court finds that ACS had a "known business practice to systematically reject any check tendered for less than the full lien amount." Perla, 458 P.3d at 351. The Court concludes that tender of the superpriority portion of the HOA lien would have been futile and was therefore excused. The Court therefore finds that the HOA sale by Giavanna did not extinguish the deed of trust securing the original purchase.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that the Court finds in favor of Plaintiff as to its excused tender claim against Defendant Saticoy Bay LLC—Series 3665 Remington Grove.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of Plaintiff Wells Fargo and against Defendant Saticoy as follows: It is hereby declared that Plaintiff Wells Fargo's First Deed of Trust recorded against the Property continues to encumber the Property and was not extinguished by the foreclosure sale conducted by the HOA on October 23, 2014.

---

[1] See Bank of Am., N.A. v. SFR Invs. Pool 1, LLC, 427 P.3d 113 (Nev. 2018) (finding that BANA's letter which stated financial obligations towards the HOA in regards to the [property] have now been "paid in full" was a permissible condition on tender); Saticoy Bay LLC Series 133 McLaren v. Green Tree Servicing LLC, 478 P.3d 376 (Nev. 2020) (same); Bank of Am., N.A. v. Trashed Home Corp., 527 P.3d 968 (Nev. 2023) (Table) (holding that ACS had a known policy of rejecting tender payments based on Kelly Mitchell's testimony that "ACS would not accept payments if the check was accompanied by the language that the obligation was paid in full").

**IT IS FURTHER ORDERED** that the Clerk of Court shall close this case.

**DATED:** January 3, 2025.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**